1  Brian H. Kim  (State Bar No. 215492)
2  James P. Keenley (State Bar No. 253106)
   BOLT KEENLEY KIM LLP
3  2855 Telegraph Ave., Suite 517
   Berkeley, California 94705
4  Phone: (510) 225-0696
   Fax: (510) 225-1095
5  Email: bkim@bkkllp.com
6          jkeenley@bkkllp.com

7  Denise Y. Tataryn (*Pro Hac Vice Application Pending*)
8  NOLAN, THOMPSON, LEIGHTON
    & TATARYN, PLC
9  1011 1st Street South, Suite 410
   Hopkins, Minnesota 55343
10 Phone:  (952) 405-7171
   Fax:     (952) 224-0647
11 Email: dtataryn@nmtlaw.com

12
13 *Attorneys for Plaintiff*

14            **UNITED STATES DISTRICT COURT**

15           **NORTHERN DISTRICT OF CALIFORNIA**

16 BRIAN BIERBAUM,                    ) Case No.: 3:22-cv-4698
                                      )
17              Plaintiff,            ) **COMPLAINT (ERISA)**
                                      )
18                                    )
19 v.                                 )
                                      )
20 LIFE INSURANCE COMPANY OF NORTH )
   AMERICA,                           )
21                                    )
                                      )
22              Defendant.            )
                                      )
23                                    )
                                      )
24 _____   )
25
26
27
28

Case No.: 3:22-cv-4698                    1                    COMPLAINT (ERISA)

**INTRODUCTION**

1.      This case challenges Defendant Life Insurance Company of North America's ("LINA") decision to deny Plaintiff Brian Bierbaum's claim for short-term and long-term disability benefits.

**JURISDICTION**

2.      Plaintiff brings this action pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

3.      Venue is proper under 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), because Defendant may be found in this District.

**PARTIES**

4.      Plaintiff Brian Bierbaum is an individual who resides in Carmel Valley, California. At all relevant times, Plaintiff was a participant in the short-term disability plan, Group Policy No.  SGD-607894, issued to BlueSpire, Inc.; and the long-term disability plan, Group Policy No. SGD-607895 issued to BlueSpire, Inc.

5.      At all relevant times, the short-term disability plan ("STD Plan") and the long-term disability plan ("LTD Plan") were employee welfare benefit plans within the meaning of ERISA § 3 (1), 29 U.S.C. § 1002(1), sponsored by BlueSpire, Inc., a company located in Minneapolis, Minnesota and Hartford, Connecticut, which was acquired in February 2021 by GlynnDevins, a company based in Kansas City, Missouri. GlynnDevins was rebranded as Attane in June 2021.

6.      Defendant LINA is the insurer of the STD Plan and LTD Plan. LINA was acquired by New York Life Insurance Company on December 31, 2020. LINA is a wholly owned subsidiary of New York Life Insurance Company.

**FACTS**

7.      Bierbaum was employed as a Senior Vice President-Health of BlueSpire, Inc., on the date of his disability.

8.      The mission for the Senior Vice President-Health position was to drive revenue growth by developing new business opportunities and product offerings within the healthcare vertical and achieve new business development goals for long-term contracts. The position required the ability to produce significant output with strong organizational, planning, and analytical skills.

9.      Bierbaum became disabled under the terms of the STD Plan and LTD Plan on December 1, 2020, when he reduced his work hours due to his medical conditions.

10.     Bierbaum was diagnosed with Relapsing Remitting Multiple Sclerosis ("RRMS") in 2017 and Palindromic Rheumatism and Psoriatic Arthritis Mutilans in 2019.

11.     Bierbaum had two relapses close in time, one in October 2017 and the second in January 2018. He also had a relapse in October 2019. He suffers from a myriad of MS symptoms, including severe fatigue, cognitive difficulties, chronic central pain syndrome, migraines/headaches, paresthesia, insomnia/sleep disruption, and other symptoms.

12.     In November 2020, Bierbaum's treating neurologist recommended that he stop working completely due to his decline and to prevent further deterioration of his health. Bierbaum wanted to continue working part time so his neurologist permitted the part-time hours but restricted him to working no more than 30 hours per week. Plaintiff submitted a STD claim to LINA.

13.     The STD Plan defines disability as because of Injury or Sickness, an employee is unable to perform the material duties of his or her regular occupation, and solely due to Injury or Sickness, is unable to earn more than 80 percent of his or her Covered Earnings.

14.     The LTD Plan defines disability as because of Injury or Sickness, an employee is unable to perform the material duties of his or her regular occupation, and solely due to Injury or Sickness, is unable to earn more than 80 percent of his or her Indexed Covered Earnings.

15.     The disability benefit under the STD Plan and LTD Plan is the less of 60% of the weekly Covered Earnings or the Maximum Disability Benefit, reduced by any Other Income Benefits.

16.     The Maximum Disability Benefit under the STD Plan is $1,500 per week. The Maximum Disability Benefit under the LTD Plan is $13,000 per month.

17.     The STD Plan maximum benefit period is 11 weeks. The maximum LTD Plan benefit period is to the normal social security retirement age.

18.     The STD Plan has a work incentive benefit which provides that the disability benefit will not be reduced unless the sum of the disability benefit, current earnings, and any additional Other Income Benefits exceed 100 percent of the employee's weekly covered earnings, the disability benefit will be reduced by the excess amount. The LTD Plan provides for this same work incentive benefit for the first 24 months the employee is eligible for a disability benefit.

19.     Plaintiff's neurologist Alejandro Centurion responded to questions from Defendant on February 3, 2021. Dr. Centurion provided the following restrictions/limitations: (1) working no greater than 20-28 hours per week, noting Plaintiff has significant mental fatigue and should avoid stress to avoid increased symptoms; (2) lack of stamina due to significant mental fatigue, noting that exhaustion sets in after 2 to 3 hours; (3) reduced fine motor skills causing reduced production, noting Plaintiff has impaired sensation which makes writing and typing difficult; (4) sitting for more than 2 to 3 hours at a time, noting MS-related joint, CNS, and bone pain and muscle spasms flaring after 2 to 3 hours; (5) limitations with moderate to high levels of executive functioning, verbal fluency, information processing, and attention and concentration; and (6) requires 30 to 45 minute break after visual concentration for more than 60 minutes noting rapid involuntary eye movement and eye pain flares after 60 minutes. Dr. Centurion provided findings supporting the restrictions which included neuropsychological assessment; brain and spine MRIs; visual screenings/tests; and occupational therapy evaluations showing impaired sensation/weakness throughout body.

20.     LINA's reviewing neurologist  concluded that there were no physical limitations from a neurological perspective and deferred cognitive limitations to the behavioral health specialist.

21.     LINA's reviewing neuropsychologist, Gitrey Heydebrand, Ph.D., concluded that the medical records provided no reliable and valid clinical evidence to support significant functional limitations due to a neuropsychological, psychological, or psychiatric impairment. Dr. Heydebrand reasoned that Dr. Centurion's restriction of working 20 to 28 hours per week was inconsistent with Bierbaum's symptoms, because his symptoms would be expected to interfere with his ability to work part time as well.

22.     Eileen Cowan, the claims analyst assigned to Bierbaum's STD claim did not agree with the recommendation to deny the STD claim and requested an escalation.  Cowan notes on January 29, 2021, that Bierbaum's symptoms were all common symptoms of MS which tend to progress as the disease progresses. She noted Bierbaum had visuospatial complaints and mental fatigue, numbness/tingling/burning/stiffness/spasm throughout the body, daily pain, bowel/bladder control problems, visual problems, sleep problems, extreme fatigue.  She added that Dr. Centurion indicated his fatigue, pain, and cognitive impairment are disabling.

23.     On January 29, 2021, Plaintiff spoke with Eileen Cowan and inquired about transferring into long-term disability.

24.     LINA issued a letter on February 24, 2021 denying Plaintiff's STD claim.

25.     On July 15, 2021, Plaintiff submitted an appeal of the STD claim. He also stated that the evidence served as proof of claim for his LTD claim. The appeal included an appeal letter explaining why LINA's decision-making was not supported by the evidence and additional documentation in support of his claims.

26.     Plaintiff argued that his claim was not based on only cognitive impairment, pointing out that his treating neurologist found his main issues also included chronic central pain, mild left side weakness, and severe fatigue.

27.     Plaintiff asserted that LINA's reviewing neurologist provided an assessment of a co-limiting condition to include fatigue resulting in cognitive dysfunction, but that his severe fatigue was disregarded.  Plaintiff suffers from mental fatigue experienced after completing tasks that demand higher thinking.

28.     Plaintiff pointed out that Jeffrey Dunn, M.D., Professor of Clinical Neurology, Chief, Division of Clinical Neuroimmunology, Stanford University Neuroscience, stated that an MRI brain showed estimated gray matter volume of the cerebrum to correspond to the 36th percentile in volume for Plaintiff's age and that the reduced gray matter volume could be associated with slowed processing speeds and difficulty in multi-tasking.

29.     The appeal letter also pointed out that Plaintiff suffers from sleep disturbances which contribute to his fatigue.

30.     The appeal letter asserted that LINA should have given weight to his chronic pain.

31.     The appeal letter criticized LINA for not considering all relevant medical evidence.

32.     The appeal letter criticized LINA for not considering Plaintiff's Senior Vice President occupational duties in rendering a decision.

33.     The appeal letter discusses LINA's obligations under a Regulatory Settlement Agreement which it signed in 2013 and LINA's failures to comply with those obligations.

34.     The appeal included a letter of support from Dr. Centurion. Dr. Centurion states that he has witnessed the continual progression of Bierbaum's symptoms since 2018 as well as developing several new symptoms in July 2020, including severe sleep disturbance, flushing, hypnagogic jerks, and myoclonic jerks. Dr. Centurion discusses the symptoms that are most disruptive to Plaintiff's ability to work. He recommends that Plaintiff stop or decrease his work commitments to avoid further impairment to his health.

35.     The appeal included a letter from Jeffrey Dunn, M.D., in his role as subspecialty consultant. Dr. Dunn states that Plaintiff can be expected to be limited by his disease by decreased physical endurance, decreased stamina, sensitivity to heat, sensory abnormality

affecting all limbs with associated imbalance, left hand weakness and tendency to unpredictable spasms of the musculature, and cognitive symptoms. He states these deficits taken together represent acknowledged sources of disability and can be especially challenging in situations requiring sustained attention, concentration, and endurance.

36.     The appeal letter included a letter from Gedisminas Ruybis, M.D., Plaintiff's primary care physician. Dr. Ruybis states that since he first started treating Plaintiff in 2019, he has seen  the struggle and progression of his symptoms despite thorough trials of medication and non-medication therapy. Dr. Ruybis describes his many symptoms and the various trials he has pursued. Dr. Ruybis is of the opinion that Plaintiff cannot engage in full-time work.

37.     The appeal letter included additional medical records. The medical records show a progression of Plaintiff's symptoms.

38.     The appeal letter also included Plaintiff's job description.

39.     On September 3, 2021, LINA issued a letter giving notice that it intended to uphold the denial of the claim, provided its reasons for doing so, and gave Plaintiff an opportunity to comment on the medical reviews.

40.     On behalf of LINA, a review was conducted by Neurologist Sanjay Jain, M.D. Dr. Jain concluded that the treating provider's opinion was not well supported by medically acceptable clinical or laboratory diagnostic techniques and was inconsistent with the other substantial evidence in the file claiming that the evidence demonstrates a normal physical and cognitive exam on repeated evaluations with the exception of some sensory impairments; the MRI brain did not reveal findings that would suggest and relapse in Plaintiff's disease or be a basis for clinically significant neurologic impairments; the evidence demonstrated a normal mental status exam whenever it was performed; that Plaintiff's cognitive complaints including those of mental fatigue are also consistent with clinical presentations that can be seen with psychiatric conditions; there was no demonstration of an underlying physiological disorder that would be a basis for limited endurance or restricting activities. Dr. Jain deferred review on non-neurologic conditions to occupational medicine review; deferred assessment concerning any

psychiatric/psychological conditions to a behavioral health specialist; and deferred neuropsychological evaluation to neuropsychology.

41.     On behalf of LINA, a review was conducted by Psychologist Les Kertay, Ph.D. Dr. Kertay concluding that the treating provider's opinion was not well supported by medically acceptable clinical diagnostic techniques and was inconsistent with the other substantial evidence in the claim file because the neuropsychological assessments were from 2017 and 2019 and unlikely to reflect current cognitive status; both assessments were of questionable validity; that interpretation of psychological assessment was difficult to interpret given Plaintiff's tendency to minimize symptoms; and that from a psychiatric perspective, treatment intensity was low and entirely inconsistent with an impairing psychiatric condition.

42.     Plaintiff's counsel contacted LINA on September 10, 2021, questioning the lack of an occupational medicine review, as recommended by Dr. Jain.

43.     LINA agreed to request an occupational medicine review before requiring Plaintiff to comment. Approximately 5 weeks later, LINA provided Plaintiff with the occupational medicine review.

44.     On behalf of LINA, an occupational medicine review was conducted by Randall Updegrove, M.D.  Dr. Updegrove concluded that the medical documents do not support continuous restrictions and physical function regarding Plaintiff's Palindromic Rheumatoid Arthritis and Psoriatic Arthritis conditions. Dr. Updegrove supports his conclusion by claiming that the treating providers had not provided an opinion on work status or level of functional limitation regarding these conditions.

45.     On November 19, 2021, Plaintiff provided comments to LINA's medical reviews. Plaintiff complained that none of the reviews considered all his symptoms that contribute to his disability, that the reviewers did not consider the complete medical evidence, and that the detailed appeal letter was not considered.

46.     The November 19 letter again requests LINA to process his LTD claim.

47.     The November 19 letter cited to medical literature supporting the clinical and MRI disassociation in patients with Multiple Sclerosis. The letter pointed out that Dr. Jain did not disagree that Plaintiff has mental fatigue. Plaintiff again pointed to the opinion of Dr. Dunn, a subspecialty consultant at Stanford, regarding his reduced gray matter volume and opinion on his disability.

48.     The November 19 letter pointed out that the appeal letter included medical literature supporting a relationship between fatigue and cognitive performance in patients with Multiple Sclerosis.

49.     The November 19 letter pointed out that LINA's reviews did not address Plaintiff's significant pain, sleep dysfunction, and other symptoms. Dr. Centurion's May 3, 2021 letter explained that Plaintiff has a large C3 lesion in the cervical spinal cord where multiple nerve tracks are located providing explanation for the pain Bierbaum experiences.

50.     The November 19 letter explained why the records support the treating physicians' opinions.

51.     The November 19 letter criticized Dr. Kertay's conclusions, noting that two treating neuropsychologists assessed Plaintiff with mild neurocognitive disorder based on their clinical assessments, not based solely on the neuropsychological assessments.

52.     The November 19 letter criticizes Dr. Updegrove's conclusions. Dr. Updegrove only opined regarding the conditions of Palindromic Rheumatoid Arthritis and Psoriatic Arthritis and therefore could not have provided an assessment based on the combined effect of all conditions, as he stated.

53.     The November 19 letter states that Dr. Updegrove is incorrect that there were no medication side effects, pointing out that a May 2020 note discusses the side effects of opioid medications, including drowsiness, sedation, and cognitive impairment.

54.     The November 19 letter stated that Plaintiff was waiting for a response to the reviews from his physician and requested LINA to wait for that response before completing its review.

55.     Despite Plaintiff's request to wait for his physician to respond, LINA issued a denial letter 5 days later on November 24, 2021. LINA states in its letter that following receipt of Plaintiff's November 19, 2021 letter, it decided that no further medical review was warranted because no new clinical evidence or objective medical documentation was provided. The letter repeats the conclusions of LINA's medical reviews without addressing Plaintiff's arguments.

56.     LINA's November 24, 2021 letter states that no further appeals will be considered. LINA did not specifically address Plaintiff's LTD claim.

57.     On December 2, 2021, treating physician Dr. Dunn provided a response to the review by Dr. Jain. Regarding Dr. Jain's statement that the provider's opinion is not well supported by medically acceptable laboratory diagnostic techniques, Dr. Dunn certified that Plaintiff's presentation satisfies the most updated extant 2017 McDonald criteria for a definite diagnosis of Multiple Sclerosis. The care and attention that was given to making the diagnosis was at industry standard.

58.     Dr. Dunn disagreed with Dr. Jain's opinion that the MRI studies did not reveal significant abnormalities. Dr. Dunn explains that the April 2021 MRI reveals ongoing demyelination of the intramedullary cervical spine cord at the C3 level. He states the lesion is found to be large and centrally placed, extending to the bilateral posterolateral spinal cord. He states that the MRI brain also reveals scattered T2 hyperintense lesions whose morphology and distribution strongly suggest demyelinating pathology. Dr. Dunn states it is noteworthy that Plaintiff's percentile of gray matter volume of the cerebrum for age was found to be at the 36th percentile with hippocampal volume found to be at the 27th percentile. This is countered by Plaintiff's whole brain volume found to be at the 87th percentile for his age. Dr. Dunn states that studies have correlated the gray matter atrophy and diencephalic atrophy with fatigue, decreased endurance, response timing, and concentration.

59.     Dr. Dunn criticized Dr. Jain, suggesting that Plaintiff request a reviewing physician with an advanced understanding of clinical neurology, ideally an actively practicing

clinician with specialty board certification and proven expertise in the subspecialty of immune-mediated disorders of the nervous system.

60.     Dr. Dunn's letter was submitted to LINA on December 6, 2021.

61.     LINA submitted Dr. Dunn's letter for consideration to Dr. Jain.

62.     On review, Dr. Jain commented that Dr. Dunn's letter did not provide any new clinical information supporting the presence of any functional impairments and was a statement of possible rationale of why certain findings may or may not be present or observable, but Dr. Jain provided no further analysis or response to Dr. Dunn's rationale.

63.     On January 11, 2022, Plaintiff submitted to LINA a copy of a letter from MetLife, approving his individual disability claim.

64.     On January 12, 2022, LINA issued a final denial letter, affirming its decision to deny the STD claim. The LTD claim was not addressed.

65.     Plaintiff has exhausted the administrative remedies for his STD and LTD claims.

66.     The LTD Plan/Policy states that Minnesota law governs. Therefore, this matter is entitled to *de novo* review pursuant to Minn. Stat. § 60A.42.

**FIRST CLAIM FOR RELIEF**
**BENEFITS DUE CLAIM PURSUANT TO ERISA § 502(a)(1)(B) Against LINA**

67.     Plaintiff incorporates Paragraphs 1 through 66 as though fully set forth herein.

68.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

69.     At all relevant times, Plaintiff became and remains disabled under the terms of the STD Plan and LTD Plan.

70.     Defendant's decision to deny STD benefits and not make a decision on the LTD claim were violations of the Plans, a violation of ERISA and its regulations, and a violation of the fiduciary duties owed by the Defendant to the Plaintiff.

71.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant for his benefit due under the STD Plan and LTD Plan, retroactive and ongoing disability benefits, interest, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

1.     Declare that Plaintiff is entitled to benefits under the STD Plan and LTD Plan.

2.     Order that LINA pay Plaintiff retroactive STD benefits and LTD benefits owed under the terms of the Plans through the date that judgment is rendered, together with pre-judgment interest on each and every such payment through the date that judgment is rendered.

3.     Declare that Plaintiff is entitled to the instated into the LTD Plan and commence the payment of monthly benefits going forward from the date of judgment according to the terms of the LTD Plan.

4.     Award Plaintiff attorneys' fees and costs incurred herein pursuant to 29 U.S.C. § 1132(g).

5.     Award such additional and further relief as the Court may deem just and proper.

Dated:  August 16, 2022

BOLT KEENLEY KIM LLP

By:   /s/ Brian H. Kim
        Brian H. Kim
        Attorneys for Plaintiff